Reed, Justice (Ret.),
sitting by designation, dissenting:
Although the burden need not be carried by precise methods of proof, it falls upon the plaintiff to establish a reasonable basis for determining the amount due.[1] While neither records of the weight of empty air mail sack shipments on plaintiff’s boats for the period in question, nor a separate tariff for empty air mail sacks exists, it seems to me a reasonable approximation of the service rendered can be reached from the facts in the record.
To reach the closest approximation of a fair charge I would remand to the Commissioner with instructions to disregard the minimum bill of lading provision and to compute the damages on the basis of the southbound tariff on bags as applied to the weight of the air sacks as estimated by the statistical results of the tests conducted in 1961.[2] Those tests produced evidence of the proportion by weight of empty air sacks to total sack shipments. It is true, as plaintiff points out, that during the 1961 test there were no shipments to Havana, a major destination in the 1950’s. *602 It is also true that it cannot be definitely determined whether the ratio established by the tests accurately reflects the experience of the period in dispute. But in the absence of any showing to the contrary by the plaintiff, I would hold the 1961 test to be the best available means of reaching a fair estimate of the weight of the air sacks shipped during the period in question.
The minimum bill of lading charge is irrelevant to a determination of the plaintiff’s charges. The air sacks, like the surface sacks, were shipped singly or in bulk as part of the mail shipments. They required no special handling or paper work and often did not comprise a separate bag. Since the air sacks were not differentiated from the rest of the shipment, there should be no separate minimum applicable to them. Hence the compensation should not differ whether the air sacks are regarded as having been sent all on one ship, as is undoubtedly not the case, or whether they are thought to have been uniformly distributed among the shipments.
The period in dispute is from October 1, 1950, to December 31, 1958. The parties have stipulated as to the total weight of all empty sacks, air and surface, shipped out of New York from August 1, 1954, and out of New Orleans from January 1, 1956, to the end of the period in question.[3] The charges may thus be computed on the basis of the assumption first that the relative proportions of sea and air sacks had not changed between the time in question and the 1961 test period, and second that the total weight of sacks shipped was constant oyer the entire period from 1950 through 1958. Such a procedure would give the plaintiff the full benefit of the doubts arising from the absence of records for the earlier years, as the parties are agreed that both the total volume and the relative proportion of air mail have grown over the past decade.[4]
Jones, Chief Judge, and Davis, Judge, took no part in the consideration and decision of this case.
*603 FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. The court, in its decision on liability of April 7, 1961, found that plaintiff is entitled to compensation for the carriage of empty air mail sacks being returned by the United States to countries of origin of such sacks, stating, in pertinent part, as follows:
What we have said above, however, does not apply to empty sacks brought back to the place of origin by plaintiff’s steamships, but which had been used in the transportation of letters, etc., by airplane. There was no duty on plaintiff as a carrier of the mails to return these sacks to the place of origin, and when plaintiff was requested to do so and it did so, it was entitled to compensation therefor.
So far as the basis for plaintiff’s compensation is concerned, in returning the sacks it was not acting as a carrier of the mails, since it had not used them to carry the letters, etc., from the point of origin. It was acting only as a carrier of cargo. Its relationship to the sacks was no different from its relationship to any other cargo. But, so far as our jurisdiction is concerned, these empty sacks were an adjunct of the United States mails and, as such, were exempt from a libel in rem in the courts of admiralty. As we stated in our former opinion in this case, 144 Ct. Cl. 154, we do not think the Suits in Admiralty Act (41 Stat. 525) was intended to apply to a suit involving the carriage of the mails; nor do we think it applies to the carriage of something so intimately connected with the carriage of the mails as a mail sack.
Defendant admits plaintiff is entitled to compensation for the carriage of these sacks, but it does not state to us how it thinks it ought to be computed. Since plaim,-tiff had a published tariff for the carriage of empty mail sachs, it would appear it is entitled to be compensated on the basis of this tariff .[5]
Plaintiff is entitled to recover for the last mentioned item, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Pule 38(c).
*604 Findings of Fact
2. Article 31 of the 1947 Paris Convention of the Universal Postal Union, which entered into force July 1, 1948 (62 Stat. 3414), provides as follows:
Article 31.

Return of empty air-mail saehs.

1. Air-mail sacks shall be returned empty to the Administration of origin by surface means. When there are as many as ten at least, special dispatches thereof shall be prepared between air-mail exchange offices designated for that purpose; such dispatches shall be labeled “Sacs rides” (Empty sacks) and numbered according to an annual series. The letter bill shows the number of sacks returned to the country of origin.
2. The provisions of Sections 5 and 6 of Article 151 of the Regulations of the Convention shall apply to empty air-mail sacks.
3. Article 31 of the 1952 Brussels Convention of the Universal Postal Union, which entered into force July 1, 1953 (4 UST1428), provides as follows:
Article 31

Return of empty air-mail saehs

1. Barring agreement to the contrary, air-mail sacks must be returned empty to the Administration of origin by surface means. As soon as at least ten sacks have accumulated, they give rise to the formation of special dispatches between air-mail exchange offices designated for that purpose; such dispatches are labeled Sacs vides (Empty sacks) and numbered according to an amiual series. The letter bill indicates the number of sacks returned to the country of origin.
2. By means of a previous agreement, an Administration may use for the formation of its dispatches sacks belonging to the Administration of destination.
3. The provisions of Sections 5 and 6 of Article 169 of the Regulations of the Convention are applicable to empty air-mail sacks.
4. On April 16, 1962, the court allowed plaintiff’s Motion for Call on the Post Office Department, in which plaintiff requested, inter alia:
*605 4. A statement or statements of an official or officials of the New York, N.Y., post office based upon his or their knowledge as to the manner of dispatching by steamships empty air mail sacks from New York, N.Y., to each of the foreign ports listed in Appendix A attached to this motion, whether, during the period October 1, 1950, to December 31, 1958, such empty air mail sacks were—
(a) dispatched in bundles enclosed in an air mail sack,
(b) enclosed in bundles of empty ordinary mail sacks, or
(c) in sacks containing correspondence.
5. A similar statement or statements from an official or officials of the New Orleans, La., post office giving similar information as in the foregoing Paragraph 4 as to the dispatch of empty air mail sacks from New Orleans, La., to ports listed in Appendix A.
Appendix A of the Motion for Call listed the following foreign ports:
Cuba: Havana Santiago
Jamaica : Kingston
Colombia : Santa Marta Barranquilla Cartagena
Panama Canal Zone: Cristobal Balboa
Costa Rica: Port Limón Puntarenas Golfito Quepos
Nicaragua : Corinto San Juan Del Sur
Honduras : Tela Puerto Cortes Amapala
Guatemala : Puerto Barrios San Jose De Guatemala Champerico
British Honduras: Belize
Panama : Almirante Puerto Armuelles
*606 5. In a letter to tbe Director of the International Service Division of the Burean of Transportation, Post Office Department, dated May 1, 1962, the Postmaster at New York stated, in part, as follows:
No record is had of the ports shown in Appendix A to which we customarily returned air mail sacks during the period October 1, 1950 to December 31, 1958.
The only person in this office presently working in the International Equipment Section who has personal knowledge of the manner of dispatching the empty air mail sacks during the period October 1, 1950 to December 31, 1958 is Kegular Mail Handler Andrew Quinn. All other employees engaged in this phase of activity during the period in question have since left the Service.
Attached is a list showing the ports in the countries named in Appendix A to which empty air mail sacks are now being returned. This manner of dispatching by steamships empty air mail sacks from New York, N.Y. to the relative ports listed, has been a continuing one and apparently prevailed during the period October 1,1950 to December 31,1958.
The list referred to in the last paragraph above is shown below:
Country Port Remarks
Cuba Havana Air mail sacks enclosed with ordinary mail sacks.
Jamaica Kingston Do.
Colombia Barranquilla Do.
Canal Zone to No air mail sacks returned either Cristobal or Balboa.
Costa Rica San Jose This port is not listed in Appendix A. Air mail sacks are enclosed in an air mail sack.
Nicaragua Managua Do.
Honduras Tela Air mail sacks enclosed in an air mail sack.
Guatemala Guatemala City via.Puerto Barrios Air mail sacks enclosed with ordinary mail sacks.
British Belize Honduras Air mail sacks enclosed in an air mail sack.
Panama Panama City This port is not listed in Appendix A. Air mail sacks enclosed with ordinary mail sacks.
6. In a letter to the Post Office Department, Bureau of Transportation, International Service Division, the New *607 Orleans Postmaster, on April 27,1962, submitted the following information:
»l» «I» «[• »{«
1. If there were any empty air mail sacks on hand at the times of the various dispatches, they would have been included with the mail to certain ports listed in Appendix A of your letter of March 30,1962.
There is no information on file to indicate air sacks were carried.
Foreman B. J. Melancon, who has been assigned to foreign mail operations since 1943, concurs that empty air mail sacks, when received at this office, were returned in due course, to originating country by surface means along with other empty sacks and mail dispatches.
Belative to statement required by Court of Claims, Foreman Melancon states that: “(a) Air mail sacks belonging to foreign administrations were dispatched in direct bundles when the quantity warranted and (b) when there were not enough these were included in bundles with ordinary mail sacks, and (c) again if there was only one or two they were included m a sack of print mail.”
Ports listed in Appendix A to which empty air mail sacks would have been returned by this office are: Havana, Cuba; Kingston, Jamaica; Santa Marta, Barranquilla, _ Cartagena, Colombia; Cristobal, Canal Zone; Port Limón, Costa Bica; Tela, Puerto Cortes, Honduras; Puerto Barrios, Guatemala; Belize, British Honduras.
In addition to the aforementioned Foreman B. J. Melancon, Clerk L. W. Gasser, Foreman E. S. Bussell and Superintendent K. M. Wilson have personal knowledge of the manner of returning empty air mail sacks during this period.
7. In a letter to the Post Office Department, dated April 4, 1962, the New Orleans Postmaster stated, in part, as follows:
Our dispatch records are not available prior to January 1,1956.
It has always been the practice to return empty mail sacks by surface vessels for ports served by the United Fruit Company as well as other lines.
Our records will reveal the number of bundles of empty mail bags that were carried, by years, by United Fruit Company broken down by ports of discharge, but they will not show whether the bundles were air mail or ordinary sacks. * * *
*608 Beginning date of return of airmail sacks via surface vessels not known. We have always returned all empty sacks via surface without indicating whether the bundles contained air mail or ordinary sacks.
8. No one connected with either the Post Office Department or the plaintiff can furnish definite information as to how many empty air mail sacks were carried on the plaintiff’s vessels which carried mail. A record was made of the number of empty mail sacks sent out by ship at both the New York and the New Orleans Post Offices. These were not divided into air mail and other mail, however. Bundles of empty sacks were dispatched on practically every ship that carried mail from both ports.
9. There is evidence in the record, both testimonial and documentary, as to certain tests which were conducted by the Post Office Department at New York in the latter part of October and during most of November 1961 and by the Post Office Department at New Orleans from about the middle of November 1961 through early January 1962. These tests were carried on to determine the number and weight of air mail sacks then being carried. The results of such tests are not very illuminating as to the carriage of air mail sacks during the years in suit.
10. An empty air mail sack weighs about 4 ounces.
11. Plaintiff’s exhibits 2PX-3 and 2PX-4 show the number of regularly scheduled airline flights from countries of the West Indies and the Caribbean area to the United States. The flights were numerous. They each carried air mail. The air mail was contained in air mail sacks of the country of origin in most, if not in all, cases. The air mail sacks received in this country from countries served by the plaintiff’s ships are returned by ship. When plaintiff’s ships carried mail, they also carried empty sacks.
12. From all the evidence in the record, it is reasonable to conclude that each of plaintiff’s ships carrying mail outbound from the United States carried at least one empty air mail sack. The evidence is inconclusive as to the carriage northbound to the United States of air mail sacks by the plaintiff’s ships.
*609 13. The plaintiff’s published tariff rates applicable to the carriage of empty air mail sacks by plaintiff’s vessels, southbound, during the period October 1, 1950, to December 31, 1958, are as follows:
United Fruit Company Tariffs
From Atlantic and Gulf ports To — Belize, British Honduras, Barrios, Guatemala, Cortes-Tela, Honduras, Limón, Costa Nica.
Kates for Bags and Bagging, viz., Mail, 3d Class.
Per cubic foot ranging from $0.70 to $0.93;
Per 100 lbs. ranging from $1.40 to $1.86.
Minimum charge for bill of lading $7.50 on October 1, 1950, increased to $10 effective September 1,1958.
Havana Steamship Conference
From Atlantic and Gulf ports To — Havana, Cuba.
Kates for Bags — Mail, 3d Class.
Per cubic foot ranging from $0.90 to $0.95;
Per 100 lbs. ranging from $2.16 to $2.50.
Minimum charge for any one bill of lading $7.50 on October 1, 1950, increased to $8 February 5, 1951, increased to $10 January 1, 1956, and to $12.50 December 16,1957.
East Coast Colombia Conference
From Atlantic and Gulf ports To — Barranquilla, Cartagena, Santa Marta.
Kates for Bags and Bagging, viz., Canvas, 3d Class.
Per cubic foot $0.85;
Per 100 lbs. $1.70 effective October 1,1950.
Per ton (2,000 lbs.) Tariff rate ranging from $56 effective March 3, 1952, to $57 effective August 5, 1957.
Minimum charge $7.50 eff. 10/ 1/50
10.00 eff. 3/ 2/52
15.00 eff. 8/22/55
12.00 eff. 11/19/55
15.00 eff. 8/ 5/57
Atlantic & Gulf/Panama Canal Zone, Colon & Panama City Conference
From Atlantic and Gulf ports To — Panama and Canal Zone.
*610 Kates for Bags, Canvas, 3d Class.
Cristobal, C.Z.
Colon, K.P.
Per ton of 2,000 lbs. or 40 cubic feet. Tariff rates ranging from $26 and $29, respectively, effective October 1, 1950, to $31.50 and $35.50, respectively, effective March. 21,1955.
Balboa, C.Z.
Panama City, K.P.
Per ton of 2,000 lbs. or 40 cubic feet. Tariff rates ranging from $20 and $29, respectively, effective October 1, 1950, to $28.50 and $32, respectively, effective April 16,1951.
Minimum charge $7.50 effective October 1, 1950, increased to $10 effective February 4,1957.
U.S. Atlantic and Gulf Ports — Jamaica (B.W.I.)
Steamship Conference
To — Kingston, Jamaica.
Kates for Cargo N.O.S. 1st Class
Per ton W/M, Tariff $62.40 eff. 10/1/50
67.20 eff. 4/30/51
60.00 eff. 4/11/55 Contract—
65.00 eff. 5/20/57 Contract—
Minimum charge for any one hill of lading to Kingston $7.50 eff. 10/1/50
8.00 eff. 4/30/51
10.00 eff. 4/11/55
14. The plaintiff also had tariffs on the carriage of freight northbound, the applicable provisions of which are as follows:
United Fruit Company Tariees
Northbound from Panama Canal Zone
To — Atlantic and Gulf ports
Minimum charge — $5.00
Northbound from Limón, Costa Kica,
Tela-Cortes, Honduras
To — Atlantic and Gulf ports
Minimum charge — $6.00
*611 15. On the basis of the application of the plaintiff’s minimum charges for southbound carriage, provided in the tariffs referred to in prior findings, where the plaintiff’s ships carried at least one air mail sack with each shipment of mail carried during the period of October 1, 1950, to December 31, 1958, including certain special handling charges provided in the tariffs (classified below as additional charges), the plaintiff is entitled to be paid the aggregate of the following summaries:

SOUTHBOUND FROM NEW ORLEANS October 1,1950-December 31,1958 Port Cristobal_ Port Limón.. Kingston_ Havana_ Barrios_ Belize_ Port Cortes.. Tela_ Barranquilla. Total-Sailings with mail Freight claimed Additional Cartage * Total 435 64 120 412 477 323 358 159 48 2,396 $3,092.00 500.00 1.137.50 3,730.00 3,620.00 2,465.00 2.727.50 1.207.50 676.00 19,155.50 $108.75 34.02 55.65 198.42 $53.56 8.33 15.37 50.85 58.74 40.13 44.30 19.58 6.40 297.26 $3,254.31 508.33 1.152.87 3.814.87 3,678.74 2,505.13 2,771.80 1,282.73 682.40 19,651.18
Total — New York_$15, 545. 25
Total — New Orleans_ 19, 651. 18
Grand total. $35, 196. 43
*612 16. The plaintiff also claims on northbound carriage, for the period October 1, 1950, through July 31, 1954, under its minimum tariffs, on the basis of at least one air mail sack carried on each shipment of mail, an amount computed as follows:

17. The measure of damages contended for by the defendant bears no relation to the plaintiff’s tariffs for the carriage of freight referred to in the court’s decision of April 7, 1961.
CONCLUSION 02? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that it recover of and from the United States fifteen thousand dollars ($15,000).

 “In such ease, even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances ‘juries are allowed to act upon probable and inferential, as well as direct and positive proof.’ ” Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264; Continental Ore Co. v. Union Carbide Corp., 370 U.S. 680, 697, note 7.

 The tariff provides for bags to be transported to the various ports at rates ranging from $28.00 to $65.00 per ton. Finding 13.

 Finding 32, United Fruit Co. v. United States, 153 Ct. Cl. 1 (1961), cert. denied 369 U.S. 818 (1962).

 Plaintiff's Brief at 7-12; defendant’s brief at 21.

 Italics supplied.